# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# CLARKSBURG

REBECCA K. CREAMER,
as Executrix of the Last Will
and Testament of Betty J.
Wade, Deceased,

      **Plaintiff,**

v.                                       CIVIL ACTION NO.: 1:16-CV-182
                                                              (GROH)

AMERICAN FAMILY LIFE ASSURANCE
COMPANY OF COLUMBUS,

      **Defendant.**

## MEMORANDUM OPINION AND ORDER
## DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
## AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Currently pending before the Court is the Plaintiff's Motion for Partial Summary Judgment [ECF No. 34] and the Defendant's Motion for Summary Judgment [ECF No. 35]. On July 12, 2017, the matters became ripe for consideration. Based upon the reasoning set forth below, the Court **DENIES** the Plaintiff's motion and **GRANTS** the Defendant's motion **IN PART**.

### I. Background

The Plaintiff's claims arise out of alleged nonpayment of insurance benefits to Betty J. Wade during her lifetime. On July 7, 1997, Wade purchased a long-term care insurance policy, which was underwritten by the Defendant. ECF No. 1-1 at 2, 10. Many years later, on September 1, 2013,[1] Wade moved into Golden Harvest, a legally unlicensed

---

[1] At this time, Wade was ninety-one years of age. ECF No. 34-1 at 2.

personal care home located in Bridgeport, West Virginia. ECF No. 1-1 at 2, 11. In August of 2014, she attempted to file a claim for benefits under the policy. See ECF Nos. 34-2; 35-2 at 2; 35-3 at 2-17. On August 25, 2014, and again on September 22, 2014, the Defendant mailed letters to Golden Harvest and Wade requesting additional information—specifically, a long-term care claim form completed by the Nursing Director of Golden Harvest—that was necessary to complete a review of the claim. ECF Nos. 34-3; 34-4; 34-5; 35-3 at 20-27. The form was not completed or provided to the Defendant at that time and the Defendant did not evaluate Wade's claim in 2014. See ECF No. 35-2 at 2-3. The insurance policy continued to remain in effect until June 4, 2016, the date of Wade's death. ECF No. 1-1 at 2, 10.

On July 20, 2016, the Plaintiff, the Executrix of Wade's estate, filed a complaint in state court alleging breach of contract (Count I), multiple violations of § 33-11-4(9) of West Virginia's Unfair Claims Settlement Practices Act ("UCSPA") (Count II), violation of § 33-15A-6(I) of West Virginia's Long-Term Care Insurance Act (Count III), and requesting punitive damages (Count IV). ECF No. 1-1 at 1-8. On September 9, 2016, the case was removed to this Court based upon diversity jurisdiction. ECF No. 1. Thereafter, in late December of 2016, the long-term care claim form was completed by Golden Harvest's Nursing Director and provided to the Defendant. See ECF Nos. 35-2 at 2; 35-4 at 2; 39 at 11-12. Upon receipt of the form and review of the claim, the Defendant determined that Wade's estate was entitled to $45,400.00 in nursing home benefits and $2,815.00 for the premium waiver. ECF No. 39 at 11-12.

On June 7, 2017, the parties filed cross-motions for summary judgment. ECF Nos. 34, 35. In her motion, the Plaintiff moves for partial summary judgment as to her breach

of contract claim, arguing that she is entitled to judgment in the amount of $48,215.00. In its motion for summary judgment, the Defendant avers that, because it agreed to pay benefits under the policy, the Plaintiff's breach of contract claim is now moot. Additionally, the Defendant states that the Plaintiff fails to put forth any actual evidence in support of her remaining claims and thus it is entitled to summary judgment in its favor.

## II. Standard of Review

Summary judgment may be granted where the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). At this dispositive stage, the court must determine whether there is a need for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51 (1986). As such, if the plaintiff fails to come forward with evidence demonstrating each essential element of his claim, judgment will be entered against him. Celotex, 477 U.S. at 322-23.

To successfully oppose a motion for summary judgment, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation and citation omitted), by furnishing affidavits, depositions or other evidence, see Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 323-25; Anderson, 477 U.S. at 247-48. Importantly, the nonmoving party cannot defeat summary judgment "without offering any concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson, 477 U.S. at 256. A "scintilla of evidence" in support of his position is insufficient. Id. at 252. In conducting its review, the court must view the evidence and inferences in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

## III. Discussion

### A.   Count I

In regard to the Plaintiff's breach of contract claim, she states that, under the terms of the policy, the Defendant has an affirmative duty to pay benefits. Notably, following removal to this Court, and subsequent to obtaining the information required to process Wade's insurance claim,[2] the Defendant reviewed the application for long-term benefits under the policy and found that they are warranted. See ECF No. 39 at 11-12. Accordingly, on April 28, 2017, the Defendant notified Plaintiff's counsel that payment would be issued in the amount of $45,400.00 for nursing home benefits and $2,815.00 for the premium waiver. ECF No. 39 at 11-12. However, merely because the Defendant agrees to pay benefits does not render the Plaintiff's breach of contract claim moot. Importantly, because the Plaintiff has not actually received payment, her alleged damages still exist.

Moreover, and arguably more imperative to the Court's decision as to Count I, the insurance policy of which the Defendant is allegedly in breach does not appear anywhere on the Court's docket. It was not submitted as an exhibit to either party's motion for summary judgment and is not filed as an attachment to the complaint. To prove breach of contract in West Virginia, the plaintiff must demonstrate that (1) a contract exists

---

[2] The Plaintiff contends that Wade never received the letters sent by the Defendant on August 25, 2014, and September 22, 2014. ECF No. 34-1 at 3. The August 25th letter informed Wade that in order for her claim to be processed, she was required to submit the long-term care claim form after it was completed by the Director of Nursing at Golden Harvest. ECF No. 35-3 at 23-25. The September 22nd letter reiterated the need for the long-term care claim form and further advised Wade that she was required to submit the same form completed by her admitting physician. ECF No. 35-3 at 26-27. The Plaintiff admits that when Wade initially filed a claim for benefits in August of 2014 under the long-term care policy, part of a required form was not completed by the Director of Nursing. See ECF Nos. 34-1 at 2-3, 35-2 at 2. Years later, in December of 2016, the Plaintiff completed and sent the required form to the Defendant for review. See ECF Nos. 35-2 at 2-3; 35-4 at 2; 39 at 11-12.

between the parties, (2) the defendant breached a term of that contract and (3) damages resulted from the breach. Wittenberg v. Wells Fargo Bank, N.A., 825 F. Supp. 2d 731, 749 (N.D. W. Va. 2012). Clearly, in light of the policy's absence, the Court cannot determine if the Defendant is now or was ever in breach of its terms. As such, both sides fall woefully short of their summary judgment burden because they each fail to present evidence as to the chief element of the Plaintiff's breach of contract claim: the contract. See Celotex, 477 U.S. at 323 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.") Put simply, a reasonable juror would be unable to find for either side in regard to Count I and, at this stage in the proceedings, this error is fatal to both motions for summary judgment.

Despite the lack of evidence presented to this Court, the parties appear to agree that an enforceable insurance policy exists and that benefits are due under that policy. In light of this agreement, the Court does not find any reason prohibiting the parties from settling this claim on their own accord. Consequently, they are **ORDERED** to return to mediation on the breach of contract claim prior to the pretrial conference.

**B.    Count II**

In its motion for summary judgment, the Defendant argues that the Plaintiff fails to present any evidence to support her claim under the UCSPA (Count II). The Plaintiff avers that the Defendant violated multiple subsections of West Virginia Code § 33-11-4(9). As articulated in the text of the statue, to prove violations under § 33-11-4(9), the Plaintiff must demonstrate that they occurred "with such frequency as to indicate a general business practice." Indeed, there must be evidence that the insurer committed

the violations frequently as "habit, custom, usage, or business policy," as opposed to an "isolated incident." Elmore v. State Farm Mut. Auto. Ins. Co., 504 S.E.2d 893, 902 (W. Va. 1998) (internal quotation and citation omitted).

The Plaintiff claims that the Defendant, by virtue of a general business practice, violated § 33-11-4(9)(b), (c), (d), (e), (f), (g), (l) and (o).[3] However, she provides no evidence in support of these claims—only allegations within her complaint and her response in opposition to the Defendant's motion for summary judgment. In particular,

---

[3] These subsections prohibit any person from committing or performing "with such frequency as to indicate a general business practice," the following:

> (b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
>
> (c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
>
> (d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;
>
> (e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;
>
> (f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
>
> (g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered;
>
> . . .
>
> (l) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;
>
> . . .
>
> (o) Failing to notify the first party claimant and the provider(s) of services covered under accident and sickness insurance and hospital and medical service corporation insurance policies whether the claim has been accepted or denied and if denied, the reasons therefor, within fifteen calendar days from the filing of the proof of loss . . . .

6

there are no affidavits, depositions, sworn declarations, admissions, interrogatory answers or other evidence to support that neither Golden Harvest nor Wade received the August 25, 2014 and September 22, 2014 letters requesting additional information to complete a review of Wade's claim. In fact, the evidence presented by the parties indicates that when the Plaintiff initially submitted her claim in August of 2014, she failed to submit all of the required materials—namely, the long term claim form completed by the Director of Nursing. See ECF Nos. 34-2; 34-4; 34-5; 35-2 at 2. The Plaintiff's allegations, unsupported by actual evidence, are not enough to withstand the Defendant's motion for summary judgment. See Anderson, 477 U.S. at 252; Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (opining that the party opposing summary judgment "may not rest upon mere allegations or denials"); Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (advising that trial courts have an "affirmative obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial" (quoting Celotex, 477 U.S. at 323-24)).

Moreover, the Plaintiff fails to demonstrate that these alleged violations occurred frequently as part of the Defendant's general business practice. See W. Va. Code § 33-11-4(9); Syl. Pt. 3, Jenkins v. J.C. Penny Cas. Ins. Co., 280 S.E.2d 252 (W. Va. 1981) ("More than a single isolated violation . . . must be shown in order to meet the statutory requirement of an indication of a general business practice, which requirement must be shown in order to maintain the statutory implied cause of action." (internal quotations omitted)), overruled on other grounds by State ex rel. State Farm Fire & Cas. Co. v. Madden, 451 S.E.2d 721 (W. Va. 1994). Accordingly, because the Plaintiff has not come forward with any evidence to support her UCSPA claims, the Defendant is entitled to

judgment as a matter of law as to Count II.

**C.    Count III**

In her response to the Defendant's motion for summary judgment, the Plaintiff voluntarily dismisses Count III of her complaint. ECF No. 38-1 at 1. Therefore, the arguments addressing this count are moot and will be disregarded for the purpose of this Order.

**D.    Count IV**

The Plaintiff's request for punitive damages is better characterized as an element of relief sought rather than a distinct claim. Nevertheless, punitive damages are generally not available for ordinary instances of breach of contract in West Virginia. Berry v. Nationwide Mut. Fire. Ins. Co., 381 S.E.2d 367, 374 (W. Va. 1989) ("Generally, absent an independent, intentional tort committed by the defendant, punitive damages are not available in an action for breach of contract."). Specifically, an insurer can be held liable for punitive damages only when its refusal to pay "is accompanied by a malicious intention to injure or defraud." Id. (internal quotation omitted) (quoting Syl. Pt. 2, Hayseeds, Inc. v. State Farm Fire & Cas., 352 S.E.2d 73 (W. Va. 1986)). Therefore, the issue of punitive damages in cases involving nonpayment of insurance benefits is "highly susceptible to summary judgment" in favor of the insurance company and will not reach the jury "[u]nless the policyholder is able to introduce evidence of intentional injury—not negligence, lack of judgment, incompetence, or bureaucratic confusion." Hayseeds, 352 S.E.2d at 81; see also N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis., Civil Action No. 3:04-1307, 2010 WL 276325, at *2-4 (S.D. W. Va. Jan. 15, 2010).

Here, the Plaintiff does not provide any evidence of malicious intent on behalf of

the Defendant. The Plaintiff argues that because Wade's claim was not dealt with according to law, punitive damages are possible. ECF No. 38-1 at 6. But this is far from the applicable standard. Nothing before this Court indicates that the Defendant's nonpayment of benefits in 2014 rises to a level of intentional injury. On the contrary, as noted above, the evidence presented by the parties indicates that when the Plaintiff initially submitted her claim in August of 2014, she failed to submit all of the required materials. See ECF Nos. 34-2; 34-4; 34-5; 35-2 at 2. Thus, it appears, based upon the meager amount of evidence available to the Court, that because the Plaintiff failed to provide all of the information necessary to process her claim, the Defendant did not complete its review and, therefore, did not distribute benefits. This hardly demonstrates malice. Accordingly, because threadbare allegations cannot be permitted to reach a jury, see Hayseeds, 352 S.E.2d at 81; see also Abcor Corp. v. AM Int'l, Inc., 916 F.2d 924, 929 (4th Cir. 1990) ("Mere assertions by the plaintiffs are not enough to survive summary judgment."), the Plaintiff's request for punitive damages in relation to her breach of contract claim (Count I) cannot stand.

In regard to Count II, although punitive damages may be awarded for violations of the UCSPA, Syl. Pt. 3, Poling v. Motorists Mut. Ins. Co., 450 S.E.2d 635 (W. Va. 1994), such damages are not warranted here because the Plaintiff's UCSPA claims do not survive summary judgment. Additionally, because the Plaintiff voluntarily dismisses her claims under the Long-Term Care Insurance Act, punitive damages also cannot be recovered under Count III. Therefore, because the Plaintiff is unable to recover punitive damages on any of her claims, Count IV must be dismissed in its entirety.

## IV. Conclusion

Based upon the foregoing, the Court **ORDERS** the Plaintiff's motion for partial summary judgment [ECF No. 34] **DENIED**.  The Court further **ORDERS** the Defendant's motion for summary judgment [ECF No. 35] **GRANTED IN PART** as to the Plaintiff's UCSPA claims (Count II) and request for punitive damages (Count IV) and **DENIED IN PART** as to the Plaintiff's breach of contract claim (Count I).  Pursuant to the Plaintiff's voluntary dismissal, all claims arising under the Long-Term Care Insurance Act (Count III) are hereby **DISMISSED**.

The parties are **ORDERED** to participate in mediation regarding the remaining breach of contract claim on or before **August 21, 2017.**

The Clerk is **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED:** August 11, 2017

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE